**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

BRITTANY INEMAN, individually and on
behalf of all others similarly situated,

                    Plaintiff,                        Case No. 14-CV-398

          v.

KOHL'S CORP.,

                    Defendant.

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND TO
COMPEL BILATERAL ARBITRATION, OR, IN THE ALTERNATIVE, TO STAY
THIS ACTION PENDING ARBITRATION**

Defendant Kohl's Corporation, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") and the parties' agreement, submits this memorandum of law in support of its motion to compel arbitration on an individual basis of the claims asserted by plaintiff Brittany Ineman ("Plaintiff"), and dismiss or stay this action.  In addition to this memorandum of law, Kohl's Corporation relies on the declaration of Rebecca Hoeft ("Hoeft Decl.").

**PRELIMINARY STATEMENT**

Kohl's Corporation hereby requests that this Court compel Plaintiff to arbitrate her claims on an individual basis and dismiss or stay this action.  Plaintiff's claims here, which allege violations of the Telephone Consumer Protection Act, 47 U.S.C. 227 *et. seq.* ("TCPA") based upon calls that Plaintiff received on her cellular phone regarding her Kohl's account, unquestionably fall within the scope of the applicable arbitration clause contained in a cardholder agreement agreed to by Plaintiff.  That arbitration clause contains an agreement to arbitrate only on an individual, and not a class wide, basis.  Plaintiff has disregarded the applicable arbitration agreement by filing this putative class action complaint in this Court, instead of initiating a

bilateral arbitration, to resolve her claims.  For the reasons set forth more fully below, this Court should compel Plaintiff to arbitrate, rather than litigate, her claims on an individual basis and dismiss or stay this action.

## FACTUAL BACKGROUND

### A.    Plaintiff's Complaint

Plaintiff filed a putative Class Action Complaint for Damages and Injunctive Relief Pursuant to 47 U.S.C. § 227 *et seq.* (Telephone Consumer Protection Act) (the "Complaint") on June 2, 2014.  (ECF Docket Entry No. 1, Complaint.)  Plaintiff alleges in her Complaint that Kohl Corporation violated Section 227(b) of the TCPA by placing non-emergency calls to her wireless numbers using an autodialer and/or using a prerecorded voice without her prior express consent.  (*Id.*, generally.)  Plaintiff seeks to represent a nationwide class of

> All persons within the United States who, on or after June 2, 2010, received a non-emergency telephone call from or on behalf of Kohl's to a cellular telephone number through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide the cellular number called on any initial application for a Kohl's credit card.

(*Id.* at ¶28.)

With respect to her individual claim, Plaintiff alleges that, in or about August 2008, she applied for and obtained a Kohl's credit card.  Plaintiff alleges that "[u]pon information and belief, [she] did not list her then-current cellular telephone phone number on the application for the credit card."  (*Id.* at ¶14.)  Plaintiff further alleges that, beginning in late 2008 through early 2013, she received "autodialed and/or prerecorded calls on her cell phone from Kohl's and/or parties operating on Kohl's behalf."  (*Id.* at ¶15.)  Plaintiff alleges that she changed her cell phone number in October 2012 to prevent Kohl's Corporation from making

"unwanted autodialed and/or prerecorded message calls to her," but that she continued to receive calls from Kohl's Corporation on her new number.[1]  (*Id.* at ¶¶17-18.)  Plaintiff alleges that the calls that she received on her cellular phone numbers violated Section 227(b)(1)(A)(iii) of the TCPA.

### B.  Plaintiff Agreed to Arbitrate Her Claims on A Bilateral Basis

Plaintiff applied for a Kohl's credit card at a Kohl's retail store in Ohio in August 2009.  (Hoeft Decl., ¶ 12.)  In accordance with the in-store application process of Kohl's Department Stores, Inc. ("KDS"), a wholly owned operating subsidiary of defendant Kohl's Corporation, a KDS sales associate would have provided to Plaintiff a copy of the then-applicable Kohl's Cardmember Agreement (the "2009 Cardmember Agreement"), and explained to her that the terms and conditions set forth therein would govern the relationship with respect to the Kohl's credit card.  (*Id.* at ¶ 13.)  The sales associate would then have asked Ms. Ineman to sign the 2009 Cardmember Agreement.  (*Id.*)  The sales representative would have also explained to Plaintiff that she could apply for the Kohl's credit card through an electronic process using a pin-pad in the Kohl's store.  (*Id.* at ¶ 14.)  The sales associate then would have provided Plaintiff with the pin-pad and instructed her to swipe a major credit card, and follow the prompts on the pin-pad.  (*Id.*)  KDS's automated processing system typically approves an application in the store within moments while the customer waits, or is sent out for further processing.  (*Id.* at ¶ 17.)

KDS's policies and practices required that it obtain Plaintiff's hard copy or electronic signature, accepting the terms of the 2009 Cardmember Agreement, in order to be

---

[1]      As set forth in the Hoeft Decl., Kohl's Corporation disputes that it made any calls whatsoever to Plaintiff's cellular phone.  (Hoeft Decl. at ¶¶ 3-4, 37.)  For purposes of this motion only, however, Kohl's Corporation accepts Plaintiff's allegations as true.  Further, it is not necessary for this Court to resolve the question of whether Kohl's Corporation made calls to Plaintiff to decide the instant motion to compel arbitration.

approved for a Kohl's credit card.  (*Id.* at ¶ 19.)  Plaintiff's credit card application would not and could not have been approved without that signature.[2]  (*Id.* at ¶¶ 13, 19.)  Plaintiff's credit card application was approved in the Kohl's retail store in Ohio, and she thereafter received, activated and used her Kohl's credit card.  (*Id.* at ¶ 19.)

The 2009 Cardmember Agreement, to which Plaintiff agreed, contained an agreement to arbitrate all disputes, requiring arbitration on an individual, and not a class or collective, basis.  Specifically, the 2009 Cardmember Agreement provided, in relevant part, as follows:

> 21.    Arbitration for Disputes: No Jury Trials or Class Actions: This section describes how all Claims (as defined in A. below) will be arbitrated instead of litigated in court.
>
> A.  "Claim" means all claims, disputes, and controversies between you and us arising from or relating to (1) this Agreement (including but not limited to the validity, scope, and enforceability of this Section 21), your Account, or any balance on your Account and (2) any prior agreement you may have had with us or Kohl's relating to your Account or any balance on your Account.  The word Claim will be given the broadest possible meaning.  For example, and without limitation, Claim includes all claims, based on contract, tort, fraud, and other intentional torts, statute, common law, and equity, and including counterclaims, cross claims, and third party claims arising from or relating to (i) advertisements and promotions about your Account or Accounts generally, goods or services financed under your Account, and the terms of financing, (ii) the Application for your Account, (iii) the terms of and the disclosures given in connection with the opening and administration of your Account and this Agreement, and (iv) the monthly statements for your Account. This Section 21 will not apply to Claims made in lawsuits filed before we delivered this Agreement to you. However, this Section 21 will apply to all other Claims, even if the facts and circumstances giving rise to the Claim existed before we or Kohl's delivered this Agreement to you.
>
> B. You or we have the right to require that each Claim be resolved by arbitration. ***In this Section 21, we means Chase Bank USA,***

---

[2]     KDS no longer has a record of Plaintiff's signature because such records are purged after three (3) years in accordance with KDS's document retention policy.  (Hoeft Decl. at ¶ 20.)

***N.A., Kohl's Department Stores, Inc. and their respective parents, affiliates, successors, and assigns.*** A Claim will be arbitrated if (a) both we and you or (b) only one or the other of you, or we exercise the right to require that the Claim be arbitrated. If, for example, we exercise our right to require that a Claim be resolved by arbitration but you do not also exercise your right to require that the Claim be arbitrated, the Claim will be resolved by arbitration. If neither you nor we request arbitration, the Claim will not be resolved by arbitration and instead will be litigated in court. All arbitrations will be pursuant to this Section 21 and will be conducted by either the American Arbitration Association ("AAA") 335 Madison Avenue 10th Floor, New York, New York 10017-4605 using Commercial Arbitration Rules (the "Rules") in effect at the time the Claim is made or the National Arbitration Forum ("NAF") P.O. Box 50191, Minneapolis, MN. 55405.  We will substitute another nationally recognized arbitration organization using procedures similar to the Rules if AAA or NAF does not serve as arbitrator.  For the Rules currently in effect, call AAA (800-925-0155) or visit its website http://www.adr.org or NAF (800-474-2371) ttp://www.arbitration-forum.com.

C.  If we or you request arbitration of a Claim, we and you will not have the right to litigate the Claim in court. This means (1) there will be no jury trial on the claim, (2) there will be no pre-arbitration discovery except as the Rules permit, (3) no Claim may be arbitrated on a class-action basis, and neither we nor you will have the right to participate as a representative or member of any class of claimants pertaining to any Claim subject to arbitration or act as a private attorney general in court or in arbitration. Generally, the arbitrator 's decision will be final and binding. There are other rights that you would have if you went to court that also may not be available in arbitration.

D. ***Claims by or against you may not be joined or consolidated in the arbitration with Claims by or against another person.*** Arbitration hearings for Claims by or against you will take place in the federal judicial district in which you reside. We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing we will pay any fees of the arbitrator and the arbitrator administrator for the first two days of that hearing. The payment of any such hearing fees will be made by us to the arbitration administrator selected by you or us pursuant to the arbitration agreement. All other fees will be allocated in accordance with the rules of the arbitration administrator and applicable law. We will advance or reimburse filing fees if the arbitration administrator determines there is good reason for

requiring us to do so or you ask us and we determine there is good cause to do so. Each party will bear the expense of the fees and costs of that party 's attorneys, experts, witnesses, documents, and other expenses regardless of which party prevails in the arbitration and any appeal, except that the arbitrator shall apply any applicable law in determining whether a party should recover any and all fees from another party.

E. This Section 21 will be governed by the Federal Arbitration Act ("FAA"). The arbitrator will apply substantive law consistent with FAA and statutes of limitations and will honor all valid privilege claims. If the Rules and this section conflict, this section will govern. Judgment upon the arbitrator's award may be entered in any court with jurisdiction. The arbitrator 's decision will be final and binding, except (1) for any appeal right under FAA or (2) if the arbitrator's award is more than $100,000, you or we may appeal it to a three-arbitrator AAA panel, which will decide the appeal by majority vote. The appealing party will pay the appeal costs.

(*Id.* at ¶ 25, Exhibit A, § 21 (emphasis added.))  In the 2009 Cardmember Agreement, Plaintiff was also advised and consented to receiving telephone calls from KDS to her cellular telephone number with respect to her account.  (*Id.* at ¶ 24, Exhibit A, § 21.)

Not long after obtaining her Kohl's credit card, Plaintiff failed to pay the amounts due.  (*Id.* at ¶ 26.)  As a result of her continued failure to pay amounts due, Plaintiff's account was ultimately closed and revoked on May 26, 2010.  (*Id.* at ¶ 27.)  Plaintiff made her last purchase using her Kohl's credit card on or about February 13, 2010.  (*Id.*)  Thus, Plaintiff used her Kohl's credit card only for a seven (7) month period from August 2009 until February 2010.  (*See id.*)  KDS closed and revoked Plaintiff's account less than one year after it was opened.  (*See id.*)  The above-referenced provisions of the 2009 Cardmember Agreement were not amended or modified between the time period from August 2009 through May 26, 2010.  (*Id.* at ¶ 28.)

## ARGUMENT

### I. THE FAA MANDATES ENFORCEMENT OF THE PARTIES' AGREEMENT TO ARBITRATE

The FAA preempts state law and requires the enforcement of arbitration agreements.[3] The FAA plainly states that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. As the Supreme Court recently reinforced in *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, --- U.S. ----, 130 S. Ct. 1758, 1774, 1776 L. Ed. 2d 605 (2010), the FAA requires a court to "give effect to the contractual rights and expectations of the parties," (*quoting Volt Info. Scis., Inc. v. Board of Trustees*, 489 U.S. 468, 479 (1989)), and agreements to arbitrate must be enforced according to their terms. *Stolt-Nielsen*, 130 S. Ct. at 1775 ("it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party ***agreed*** to do so." (Emphasis in original)).

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Gore v. Alltel Communications, LLC,* 666 F.3d 1027 (7th Cir. 2012). "If the court is satisfied that the parties have a contract that provides for arbitration of some issues between them, then the Arbitration Act requires it to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration, 'whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.'" *Mason Cos., v. DAZ Sys., Inc.*, No. 12-cv-547-SLC (W.D. Wis. July 15, 2013) (quoting *Moses H. Cone*, 460

---

[3]    It cannot be meaningfully disputed that the FAA applies here. First, the Arbitration Clause specifically states that it is governed by the FAA. In addition, courts have held that arbitration clauses contained in credit cardholder agreements are contracts that evidence transactions involving interstate commerce. *See, e.g., Clemens v. GE Money Bank,* No. 11-CV-00210, 2012 WL 5868659, *1 (E.D. Wis. Nov. 20, 2012).

U.S. at 24–25; *Miller v. Flume*, 139 F. 3d 1130, 1136 (7th Cir. 1998)); *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") Courts, therefore, should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22.

Here, this Court must compel arbitration if it finds that: (1) a valid agreement to arbitrate exists, (2) the dispute falls within the scope of that agreement; and (3) Plaintiff has refused to proceed to arbitration in accordance with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004); *Villalobos v. EZ Corp.*, No. 12-cv-852-SLC, 2013 WL 3732875 (W.D. Wis. July 15, 2013). Where these conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (emphasis in original); 9 U.S.C. § 4 ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement"). The party opposing arbitration, here Plaintiff, bears the burden of proving that the claims at issue are not referable to arbitration. *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91-92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000); *Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772, 775 (N.D. Ill. 2002)

Here, the third prerequisite is readily satisfied – Plaintiff has filed a putative class action complaint in federal court rather than initiating a bilateral arbitration, thereby refusing to

honor the arbitration agreement in the 2009 Cardholder Agreement.  In addition, and as set forth more fully below, the other two conditions are met here and this Court must, therefore, compel bilateral arbitration.

A. **A Valid Agreement To Arbitrate Exists**

1. There Is an Agreement Between the Parties to Arbitrate

Plaintiff cannot dispute that she accepted the terms of the 2009 Cardholder Agreement when she applied for and obtained a Kohl's credit card, and thereafter used her Kohl's credit card.[4]  (Hoeft Decl., ¶¶ 12-27.)  Under similar circumstances in the context of a retail store credit card agreement, the United States District Court for the District of Wisconsin found an enforceable agreement to arbitrate.  *See, e.g., Clemens v. GE Money Bank*, No. 11-CV-00210, 2012 WL 5868659, *1 (E.D. Wis. Nov. 20, 2012).

The fact that KDS no longer maintains a copy of Plaintiff's electronic signature does not render the 2009 Cardholder Agreement, or its bilateral arbitration clause, unenforceable. Courts have rejected the argument that an issuer of a credit card is required to submit an application or other document bearing a customer's signature in order to prove the existence of an agreement.  *See Fahey v. U.S. Bank Nat'l Ass'n*, No. 04: 05CV01453-FRB, 2006 WL 2850529, *2 (E.D. Mo. Sept. 29, 2006).  Such courts have held that the use of the cards amounts to acceptance of the terms of the cardholder agreements.  *Id.* (citing *Grasso v. First USA Bank*, 713 A.2d 304, 308-09 (Del. Super. 1998) (credit card holder accepted cardholder agreement's

---

[4]     In determining whether parties have entered into a valid agreement to arbitrate, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *see also Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit") (internal quotations omitted). Regardless of which state's law is applied, there can be no question that Plaintiff agreed to the 2009 Cardholder Agreement, which contains an arbitration clause that applies to Kohl's Corporation, as the parent company of KDS. (Hoeft Decl. at ¶ 25 and Exhibit A at  ¶ 21 ("In this Section 21, we means Chase Bank USA, N.A., Kohl's Department Stores, Inc. and their respective parents, affiliates, successors, and assigns."))

terms by using the credit card); *Gaynoe v. First Union Direct Bank, N.A.*, 2001 WL 34000142 (N.C. Super. 2001) (cardholder's use of credit card issued by bank constituted acceptance of the contract terms); *see also Davis v. JP Morgan Chase Bank*, 2004 WL 783382 (N.D. Ill 2004) (plaintiffs accepted the modification in the Cardmember Agreement by continuing to use the credit card after notification that the terms had changed).

The United States District Court for the Northern District of Illinois reached the same result in *Reyes v. Equifax Credit Information Services*, No. 03-C-1377, 2003 WL 22922190, *3-4 (N.D. Ill. Dec. 10, 2003). There, the Court held that:

> Here, [the plaintiff] chose to apply for a credit card with FNANB and signed the accompanying Credit Card Agreement, which stated that its terms could be modified upon "prior written notice" and that all notices would be sent to the billing address (presumably, the address provided on the credit card application) unless the cardholder provided FNANB with a new address. (Ex. 2 to Motion to Reconsider ¶¶ 19, 25.) On these facts, [the plaintiff] has not demonstrated that the arbitration agreement is invalid merely because he did not receive or sign it. *See, e.g., Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002) (enforcing arbitration agreement in Title VII case where employee claimed she never received it but employer testified that the agreement was included with employee's payroll check).

*Id.* at *4. The Court in *Reyes* relied upon *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023 (7th Cir. 2002), wherein the Seventh Circuit affirmed a ruling that a license agreement required arbitration of the plaintiffs' claims of misrepresentation, negligence, and breach of warranty, but remanded for a determination of whether one of the plaintiffs, a non-signatory, was nevertheless bound by that agreement. On remand, the district court opined that "[i]n the absence of a signature, a party can be bound by an agreement's arbitration provision if that party's conduct 'manifest[s] an intention to be bound by that [a]greement.'" No. 99 C 4704, 2003 WL 164220, *2 (N.D. Ill. Jan. 23, 2003) (*quoting Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995)). The district court found such an intent

because the non-signatory plaintiff assumed the license agreement with the arbitration clause by becoming a sublicensee of another plaintiff.  *Id.*

Here, Plaintiff cannot debate that she manifested an intent to be bound to the 2009 Cardholder Agreement because she applied for and then activated and used the Kohl's credit card.  She is therefore bound to the entirety of the 2009 Cardholder Agreement, including its bilateral arbitration clause.

2.   <u>Plaintiff Cannot Show That the Agreement to Arbitrate is Invalid</u>

An arbitration agreement governed by the FAA, like the arbitration provision contained in 2009 Cardholder Agreement, is presumed to be valid and enforceable.  *See Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).

Plaintiff will not be able to point to any basis to invalidate the arbitration clause. Indeed, multiple courts have held that similar arbitration agreements are valid over the plaintiffs' various objections.  *See, e.g., Villalobos v. EZ Corp.*, No. 12-cv-852-SLC, 2013 WL 3732875, *6 (W.D. Wis. July 15, 2013) (enforcing arbitration agreement containing class action waiver, and rejecting argument that arbitration clause was unconscionable, in the context of a pay day loan agreement); *Tuttle v. Sallie Mae, Inc.*, No.: 1:13-CV-183-JD-RBC, 2014 WL 545379, (N.D. Ind. Feb. 11, 2014) (enforcing arbitration agreement in a case asserting TCPA claims in the context of a student loan agreement, and rejecting the plaintiff's unconscionability arguments).

Further, under Supreme Court precedent, Plaintiff would not be successful if she sought to attack the arbitration clause on the grounds that it contains a class action waiver.  *See AT & T Mobility LLC v. Concepcion,* __ U.S__, 131 S. Ct. 1740, 1746 ( 2011); *see also Villalobos,* 2013 WL 3732875, * 6.  The Supreme Court's landmark decision in *Concepcion*

11

dispels any doubt that arbitration agreements containing class action waivers, such as the agreement at issue here, are valid and enforceable.  As the Wisconsin Supreme Court held in *Cottonwood Financial, Ltd. v. Estes,*

> *Concepcion's* holding is clear: the FAA preempts any state law that classifies an arbitration agreement as unconscionable, and therefore unenforceable, simply because the agreement prohibits an individual from proceeding as a member of a class. Accordingly, under *Concepcion*, the waiver of classwide proceedings in Estes's arbitration agreement with Cottonwood does not render the agreement substantively unconscionable.

2012 WI App 12, ¶ 12, 339 Wis. 2d 472, 486–487, 810 N.W.2d 852, 860 (2012) (enforcing an agreement to arbitrate in the context of a loan agreement).

Accordingly, the arbitration agreement contained in the 2009 Cardholder Agreement is valid and should be enforced.

**B.**     **Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement**

Once it is clear, as it is in this case, that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law.  *Gore*, 666 F.3d at 1032.  "To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Id.* at 1032–33 (internal quotations omitted).

It cannot be said with positive assurance here that Plaintiff's claims against Kohl's Corporation are not within the scope of the arbitration agreement.  The applicable arbitration agreement covers:

> all claims, disputes, and controversies between you and [Kohl's Corporation] arising from or relating to (1) this [2009 Cardholder] Agreement (including but not limited to the validity, scope, and enforceability of this Section 21), your Account, or any balance on your Account and (2) any prior agreement you may have had with

us or Kohl's relating to your Account or any balance on your Account.[5]

(Hoeft Decl., ¶25, Exh. A, ¶21.)   Plaintiff's claims here arise from or relate to the 2009 Cardholder Agreement, under which KDS was permitted to make telephone calls to Plaintiff on her cellular phone with respect to her Kohl's credit card account.   Accordingly, the Court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *Gore*, 666 F.3d at 1032–33, and thus must presume that the claims raised by Plaintiff's Complaint are subject to arbitration.

Numerous courts have compelled arbitration of TCPA claims, such as Plaintiff's here, relating to collection calls under similar agreements to arbitrate.   *See, e.g., Owings v. T–Mobile USA, Inc.*, 3:12–CV–1385–J–12, 2013 WL 4401824 at *7 (M.D. Fla. Aug. 15, 2013) ("The alleged violations are tied directly to charges that are set forth in the Service Agreement. Thus, Plaintiff's claims have the requisite substantial relationship and nexus to the contract and the agreement to arbitrate."); *Brown v. DIRECTV* CV 12–08382 DMG EX, 2013 WL 3273811 at *6 (C.D. Cal. June 26, 2013) (quoting *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. Mar. 1, 2013) ("calls made to plaintiffs 'because Plaintiffs had failed to make timely payments on their accounts,' for the limited purpose of collecting money owed them,' . . . were related to the delinquent credit accounts' and thus TCPA claims based on those calls were covered by Citi arbitration clause"); *Coppock v. Citigroup, Inc.*, C11–1984–JCC, 2013 WL 1192632, at (W.D. Wash. Mar. 22, 2013) ("same"); *Montgomery v. Applied Bank*, 848 F.Supp.2d 609, 619 (S.D.W.Va .2012) ("The Court finds that the alleged "criminal" actions associated with

---

[5]      While KDS is the contracting party to the 2009 Cardmember Agreement, the arbitration provision expressly provides that "[i]n this Section 21, we means Chase Bank USA, N.A., Kohl's Department Stores, Inc. and their respective parents, affiliates, successors, and assigns," thus including Kohl's Corporation.  (Hoeft Decl. ¶ 25.) Accordingly, although Kohl's Corporation is not a proper defendant to this action, it has to right to compel arbitration under the 2009 Cardmember Agreement.

the placing of phone calls to collect on a debt are not beyond the scope of the Agreement because the Court cannot say 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. ").

Here, Plaintiff's claims against Kohl's Corporation fall within the scope of the arbitration agreement and as a result, the FAA requires this Court to compel arbitration.

### C.    This Court Must Compel Bilateral Arbitration

While Plaintiff has asserted claims in her Complaint on behalf of herself and a putative class, this Court must compel Plaintiff to arbitrate her claims on an individual basis. The applicable arbitration agreement here expressly requires bilateral, and not class, arbitration. Under binding Supreme Court precedent, this Court must compel bilateral (as opposed to class) arbitration of Plaintiff's claim.   Indeed, in *Stolt-Nielsen*, the Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  130 S. Ct. at 1775 (emphasis in original). In that case, the Supreme Court held that an arbitration panel's decision to impose class arbitration on the parties, who had not affirmatively consented to it, was "fundamentally at war" with the FAA's foundational principle that arbitration is a matter of consent.  *Id.* at 1775.

In reaching its decision, the Supreme Court reiterated the long-standing principle that "[w]hile the interpretation of an arbitration agreement is generally a matter of state law – the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'"  130 S. Ct. at 1773 (citations omitted).  The Court explained "that the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms."  *Id.* (citations and internal quotation marks omitted).   The Court further explained that "parties are generally free to structure their arbitration agreements as they see fit," including by "agree[ing] on rules under

14

which any arbitration will proceed" or "specify[ing] *with whom* they choose to arbitrate their disputes." *Id.* at 1774 (emphasis in original) (citations and internal quotations omitted).

Finally, the Supreme Court opined that while arbitrators are in some contexts at liberty to adopt "procedures as are necessary to give effect to the parties' agreement," "[a]n implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." *Id*. at 1775. Rather, the Court held that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed [that] the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.* The Court declared that the "changes brought about by the shift from bilateral arbitration to class-action arbitration" – including the loss of cost savings and efficiency associated with bilateral arbitration and the magnified stakes of class-wide arbitration – are "fundamental." *Id.* at 1776. Accordingly, it concluded, "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* Instead, the parties must affirmatively agree to class-action arbitration.[6]

Here, there is not only **no** contractual basis for concluding that Kohl's Corporation consented to class action arbitration, but to the contrary, Kohl's Corporation expressly rejected class arbitration in the arbitration agreement. Given the Supreme Court's holding "that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so," 103 S. Ct. at 1775, this Court must compel arbitration as to Plaintiff's claims on an individual basis.

---

[6]     The Supreme Court echoed these principles in its decision in *Concepcion*.

15

**II.    THIS COURT SHOULD DISMISS, OR ALTERNATIVELY STAY, THIS CASE**

When, as here, all claims made in a litigation are subject to arbitration, a court may choose to dismiss the action in its entirety or stay the proceedings pending arbitration.  *See, e.g., Villalobos,* 2013 WL 3732875 at *8 (citing *Green v. SuperShuttle Int'l, Inc*., 653 F.3d 766, 769–70 (8th Cir. 2011); *Soto–Fonalledas v. Ritz–Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 473 (1st Cir. 2011); *Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009); *Poteat v. Rich Prods. Corp.*, 91 F. App'x 832, 835 (4th Cir. 2004); *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999)); *see also Chambers v. Aviva Life & Annuity Co.*, 2013 WL 1345455, *4–5 (N.D. Ill. 2013) (dismissing rather than staying action where the entire controversy was to be resolved by arbitration citing cases); *see also* 9 U.S.C. § 3.  In *Villalobos,* this Court granted the defendant's motion to compel arbitration and found that the case "should be dismissed and not stayed because the entirety of the dispute between the parties is arbitrable." *Id.* at *9.  Because all of Plaintiff's claims are subject to arbitration, there is no claim on which this Court may grant relief.  Therefore, this Court should dismiss this case.

Alternatively, and at the very least, this Court should stay this action pending the conclusion of arbitration pursuant to Section 3 of the FAA.  9 U.S.C. § 3.

## CONCLUSION

For the foregoing reasons, this Court should compel bilateral arbitration of Plaintiff's claims, and either dismiss or stay this case pending the conclusion of arbitration.

Dated this 23rd day of June, 2014.

*/s/ Howard A. Pollack*

Howard A. Pollack
John L. Kirtley
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI  53202
Phone:      (414) 273-3500
Fax:         (414) 273-5198
Email:      hpollack@gklaw.com
                jkirtley@gklaw.com

*and*

Bryan J. Cahill
GODFREY & KAHN, S.C.
One East Main Street
Madison, WI  53703
Phone:      (608) 257-3911
Fax:         (608) 257-0609
Email:      bcahill@gklaw.com

*and*

Joseph A. Boyle*
Lauri A. Mazzuchetti*
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, NJ  07054
Phone:      (973) 503-5900
Fax:         (973) 503-5950
Email:      LMazzuchetti@KelleyDrye.com
                MInness@KelleyDrye.com

*Attorneys for Defendant Kohl's Corporation*

*  (To be admitted pro hac vice)
11686225.1

17